Justice Scalia,
dissenting.
I would reverse the judgment of the Ninth Circuit. I agree with the conclusion of the three other Courts of Appeals to address the question: that a debtor who owns a car free and clear is entitled to the car-ownership allowance. See In re Washburn, 579 F. 3d 934 (CA8 2009); In re Tate, 571 F. 3d 423 (CA5 2009); In re Ross-Tousey, 549 F. 3d 1148 (CA7 2008).
The statutory text at issue is the phrase enacted in the Bankruptcy Abuse Prevention and Consumer Protection Act *81 of 2005 (BAPCPA), “applicable monthly expense amounts specified under the National Standards and Local Standards,” 11 U. S. C. § 707(b)(2)(A)(ii)(P. The Court holds that the word “applicable” in this provision imports into the Local Standards a directive in the Internal Revenue Service’s Collection Financial Standards, which have as their stated purpose “to help determine a taxpayer’s ability to pay a delinquent tax liability,” App. to Brief for Respondent la. That directive says that “[i]f a taxpayer has no car payment,” the ownership cost provisions of the Local Standards will not apply. Id., at 3a.
That directive forms no part of the Local Standards to which the statute refers; and the fact that portions of the Local Standards are to be disregarded for revenue-collection purposes says nothing about whether they are to be disregarded for purposes of Chapter 13 of the Bankruptcy Code. The Court believes, however, that unless the IRS’s Collection Financial Standards are imported into the Local Standards, the word “applicable” would do no work, violating the principle that “ ‘[w]e must give effect to every word of a statute wherever possible.’” Ante, at 70 (quoting Leocal v. Ashcroft, 543 U. S. 1, 12 (2004)). I disagree. The canon against superfluity is not a canon against verbosity. When a thought could have been expressed more concisely, one does not always have to east about for some additional meaning to the word or phrase that could have been dispensed with. This has always been understood. A House of Lords opinion holds, for example, that in the phrase “ fin addition to and not in derogation of’” the last part adds nothing but emphasis. Davies v. Powell Duffryn Associated Collieries, Ltd., [1942] A. C. 601, 607.
It seems to me that is the situation here. To be sure, one can say “according to the attached table”; but it is acceptable (and indeed I think more common) to say “according to the applicable provisions of the attached table.” That seems to me the fairest reading of “applicable monthly expense *82 amounts specified under the National Standards and Local Standards.” That is especially so for the Ownership Costs portion of the Local Standards, which had no column titled “No Car.” Here the expense amount would be that shown for one car (which is all the debtor here owned) rather than that shown for two cars; and it would be no expense amount if the debtor owned no car, since there is no “applicable” provision for that on the table. For operating and public transportation costs, the “applicable” amount would similarly be the amount provided by the Local Standards for the geographic region in which the debtor resides. (The debtor would not first be required to prove that he actually operates the cars that he owns, or, if he does not own a car, that he actually uses public transportation.) The Court claims that the tables “are not self-defining,” and that “[s]ome amount of interpretation” is necessary in choosing whether to claim a deduction at all, for one car, or for two. Ante, at 76, 77. But this problem seems to me more metaphysical than practical. The point of the statutory language is to entitle debtors who own cars to an ownership deduction, and I have little doubt that debtors will be able to choose correctly whether to claim .a deduction for one car or for two.
If the meaning attributed to the word by the Court were intended, it would have been most precise to say “monthly expense amounts specified under the National Standards and Local Standards, if applicable for IRS collection purposes.” And even if utter precision was too much to expect, it would at least have been more natural to say “monthly expense amounts specified under the National Standards and Local Standards, if applicable.” That would make it clear that amounts specified under those Standards may nonetheless not be applicable, justifying (perhaps) resort to some source other than the Standards themselves to give meaning to the condition. The very next paragraph of the Bankruptcy Code uses that formulation (“if applicable”) to limit to actual expenses the deduction for care of an elderly or chronically *83 ill household member: “[T]he debtor’s monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary” for that, purpose. 11 U. S. C. §707(b)(2)(A)(ii)(II) (emphasis added).
Elsewhere as well, the Code makes it very clear when prescribed deductions are limited to actual expenditures. Section 707(b)(2)(A)(ii)(I) itself authorizes deductions for a host of expenses — health and disability insurance, for example — only to the extent that they are “actual ... expenses” that are “reasonably necessary.” Additional deductions for energy are allowed, but again only if they are “actual expenses” that are “reasonable and necessary.” § 707(b)(2)(A)(ii)(V). Given the clarity of those limitations to actual outlays, it seems strange for Congress to limit the car-ownership deduction to the somewhat peculiar category “cars subject to any amount whatever of outstanding indebtedness” by the mere word “applicable,” meant as incorporation of a limitation that appears in instructions to IRS agents.*
I do not find the normal meaning of the text undermined by the fact that it produces a situation in which a debtor who *84 owes no payments on his car nonetheless gets the operating-expense allowance. For the Court’s more strained interpretation still produces a situation in which a debtor who owes only a single remaining payment on his car gets the full allowance. As for the Court’s imagined horrible in which “a debtor entering bankruptcy might purchase for a song a junkyard car,” ante, at 79: That is fairly matched by the imagined horrible that, under the Court’s scheme, a debtor entering bankruptcy might purchase a junkyard car for a song plus a $10 promissory note payable over several years. He would get the full ownership-expense deduction.
Thus, the Court’s interpretation does not, as promised, maintain “the connection between the means test and the statutory provision it is meant to implement — the authorization of an allowance for (but only for) ‘reasonably necessary’ expenses,” ante, at 74. Nor do I think this difficulty is eliminated by the deus ex machina of 11 U. S. C. § 1329(a)(1), which according to the Court would allow an unsecured creditor to “move to modify the plan to increase the amount the debtor must repay,” ante, at 79. Apart from the fact that, as a practical matter, the sums involved would hardly make this worth the legal costs, allowing such ongoing revisions of matters specifically covered by the rigid means test would return us to “the pre-BAPCPA case-by-case adjudication of above-median-income debtors’ expenses,” ante, at 78. If the BAPCPA had thought such adjustments necessary, surely it would have taken the much simpler and more logical step of providing going in that the ownership-expense allowance would apply only so long as monthly payments were due.
The reality is, to describe it in the Court’s own terms, that occasional overallowance (or, for that matter, underallowance) “is the inevitable result of a standardized formula like the means test.... Congress chose to tolerate the occasional peculiarity that a brighter-line test produces.” Ibid. Our job, it seems to me, is not to eliminate or reduce those “oddit[ies],” ibid., but to give the formula Congress *85 adopted its fairest meaning. In my judgment the “applicable monthly expense amounts” for operating costs “specified under the . . . Local Standards” are the amounts specified in those Standards for either one car or two cars, whichever of those is applicable.

The Court protests that I misunderstand its use of the Collection Financial Standards. Its opinion does not, it says, find them to be incorporated by the Bankruptcy Code; they simply “reinforc[e] our conclusion that ... a debtor seeking to claim this deduction must make some loan or lease payments.” Ante, at 73. True enough, the opinion says that the Bankruptcy Code “does not incorporate the IRS’s guidelines,” but it immediately continues that “courts may consult this material in interpreting the National and Local Standards” so long as it is not “at odds with the statutory language.” Ante, at 72. In the present context, the real-world difference between finding the guidelines incorporated and finding it appropriate to consult them escapes me, since I can imagine no basis for consulting them unless Congress meant them to be consulted, which would mean they are incorporated. And without incorporation, they are at odds with the statutory language, which otherwise contains no hint that eligibility for a ear-ownership deduction requires anything other than ownership of a car.